IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| **OAK CREEK INVESTMENT PROPERTIES, INC.** | **PLAINTIFF** |
| V. | **CASE NO. 4:18-CV-4009** |
| **AMERICAN ELECTRICAL POWER SERVICE CORPORATION; KMT GROUP, INC.; and CLEAResult CONSULTING, INC.** | **DEFENDANTS** |
| **AND** | |
| **KMT GROUP, INC.** | **THIRD-PARTY PLAINTIFF** |
| V. | |
| **JIMMY HICKEY and RICHARD SMITH** | **THIRD-PARTY DEFENDANTS** |

## OPINION AND ORDER

Now pending before the Court is a Motion in Limine (Doc. 243) filed jointly by Defendants American Electrical Power Service Corporation, KMT Group, Inc., and CLEAResult Consulting, Inc. The Motion seeks to exclude the following from trial: (1) testimony and documentary evidence regarding prices of used mobile homes that Plaintiff Oak Creek Investment Properties, Inc. ("Oak Creek"), submitted to the Defendants after discovery closed in this case; (2) photographs of Oak Creek's homes depicted in a "vacant condition between leases," which were also disclosed after discovery ended; (3) Oak Creek's evidence of repairs it made to one mobile home on January 22, 2020, which was disclosed after discovery ended; (4) testimony by Oak Creek's expert Jeffrey Rothbart; and (5) testimony by Oak Creek's expert David G. Shreve concerning possible future damage to certain mobile home units. For the reasons explained herein, this Motion is **GRANTED IN PART AND DENIED IN PART**.

1

Also pending is Oak Creek's Motion to Reopen Discovery (Doc. 248). Oak Creek asks that discovery be reopened briefly for the purpose of allowing the late production of documents attached as Exhibit A to the Motion (Doc. 248-1). The Court has reviewed these documents and finds that they contain cost estimates and photographs of used mobile homes obtained from various sellers and locations. Oak Creek concedes that this evidence was, indeed, acquired after discovery closed—but only very shortly after the Court issued a summary judgment Order deciding the proper valuation of Oak Creek's damages under Arkansas law. Defendants oppose the Motion (Docs. 252–254) and argue that the Court's ruling on the proper valuation of damages should not have come as a surprise to Oak Creek and that it should have produced this evidence before the Court issued the Order on summary judgment. For the reasons explained below, the Court **GRANTS** the Motion to Reopen for a period of thirty days from today's date, but only for the limited purpose of allowing Oak Creek to produce the documents that are attached to the Motion as Exhibit A and to allow Defendants to take any written discovery and/or depositions they believe are necessary to test and potentially rebut this new evidence. The Court does not contemplate extending any other deadlines set forth in the Third Amended Case Management Order (Doc. 268).

## I. MOTION IN LIMINE (Doc. 243)

### A. New Evidence Regarding Prices of Used Mobile Homes

The Court entered an Order on summary judgment on January 9, 2020 (Doc. 171), in which it resolved the parties' dispute over the proper way to calculate Oak Creek's purported damages under Arkansas law. The Court explained:

> If the proof at trial shows that the mobile homes have been destroyed beyond repair—as Oak Creek contends—then the proper measure of

> general damages is the reasonable cost to replace the mobile homes, as explained above. *See Bush v. Taylor*, 197 S.W. 1172, 1174 (Ark. 1917). But here, too, "cost to replace" does not mean the cost to replace 15-year-old mobile homes with brand new ones—as Oak Creek seems to believe. The age, condition, and depreciated state of the mobile homes must be taken into consideration. *See Barnes v. Young*, 238 Ark. 484, 488 (1964) (finding that the proper measure of damages for a completely destroyed, fifty-year-old fence situated on real property was not "the replacement cost of a new fence," but "the cost of replacement of the existing fence in substantially the same condition that existed at the time appellants destroyed it"); *Powell v. TIP Petroleum, Inc.*, 510 F.3d 818, 824 (8th Cir. 2007) (holding that when chattel affixed to realty suffers damage, it is inequitable to consider replacing a damaged, old item with a brand new one, since "the measure of compensatory damages would be best represented as the cost of installing the new [chattel] reduced by the difference in value between the new [chattel] and the old [chattel], though the market value of the old [chattel] at the time of their removal would presumably also be an acceptable measure of damages").

(Doc. 171, pp. 19–20).

Approximately a month after the Court's ruling, Oak Creek produced to the Defendants certain documents that supposedly demonstrate the prices of *used* mobile homes that Oak Creek found for sale—in contrast with Oak Creek's previously disclosed evidence of the cost of *new* mobile homes. *See* Doc. 248-1. Defendants now object to the disclosure of this evidence after the discovery deadline.

The Court finds that pursuant to Federal Rule of Civil Procedure 37(c)(1), Oak Creek has sufficiently demonstrated that the late production of used-home cost data is "substantially justified or is harmless." According to Rule 37, if a party fails to provide information in compliance with Rule 26(a) or (e), that party will not be permitted to "use that information . . . to supply evidence . . . at a trial." Fed. R. Civ. P. 37(c)(1). However, the Eighth Circuit in *Wegener v. Johnson* acknowledged that discerning whether late-disclosed evidence is nonetheless "substantially justified" or "harmless" is not always a straightforward task. Therefore, courts should consider certain other factors, including

"the reason for noncompliance [with the discovery deadline], the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." 527 F.3d 687, 692 (8th Cir. 2008).

In the case at bar, the Court finds credible Oak Creek's stated reason for its noncompliance with the discovery deadline.  Oak Creek and the Defendants vigorously disputed how damages should be calculated in this case, and the dispute became the subject of voluminous briefing on summary judgment.  The Court's Order resolving the issue was approximately twenty pages long, and though the Court's analysis was not particularly controversial or "close" as a legal matter, the Court was required to engage in a detailed analysis of Arkansas law in order to rule on the issue.

With respect to the second and third *Wegener* factors, the Court finds that the surprise and prejudice the Defendants might suffer due to the late disclosure of this cost data can be cured by reopening discovery for a short window of time.  A thirty-day extension of the discovery deadline should be sufficient to allow Defendants the opportunity to test this proof and present it to their experts for evaluation.  No disruption in the order and efficiency of the trial will result from this thirty-day extension.[1]

As for the final *Wegener* factor, the Court finds that the cost data is critical to Oak Creek's calculation of its damages.  If the Court were to simply exclude this evidence out of hand, especially considering the fact that the evidence was disclosed to the Defendants

---

[1] Pretrial disclosures and deposition designations are not due until October 22, 2020; counter-designations are not due until October 29; and the parties' joint motion to exclude deposition testimony is not due until November 5.  The trial remains set to commence on December 2.  (Doc. 268, p. 7).

very shortly after discovery ended, such a decision would work an extreme and undeserved hardship on Oak Creek.  Moreover, the Court is aware that it possesses the discretion to modify its own scheduling order to reopen discovery for a brief period under Rule 16(b)(4), provided there is "good cause."  Fed. R. Civ. P. 16(b)(4).  For the reasons already stated, the Court finds that good cause exists to modify the Court's discovery deadline and to reopen discovery for thirty days **with respect to Oak Creek's cost data attached at Doc. 248-1**.  The thirty-day extension applies *only* to these documents, and discovery is not otherwise reopened as to any other categorical topic.

### B. Photographs of Oak Creek's Homes in a "Vacant Condition" between Leases

Defendants explain in their Motion that on February 12, 2020, Oak Creek produced certain photographs of mobile homes that were allegedly in a "vacant condition" between leases.  (Doc. 243, p. 3).  Defendants believe Oak Creek has produced these photographs after the discovery deadline in order to try to demonstrate, generally, "the condition of the mobile homes after tenants move out to preempt any claim regarding the lack of maintenance at the mobile homes."  (Doc. 244, p. 4).  Defendants ask that the Court not permit Oak Creek's late disclosure of these photographs.

Oak Creek's written response to the Motion (Doc. 250) does not address these photographs.  Accordingly, Oak Creek has failed to offer any justification for the photographs' late disclosure under Rule 37.  The Court also construes Oak Creek's silence on the subject as a concession that it lacks good cause under Rule 16 to reopen discovery to consider these photographs.  Even though "the exclusion of evidence is a harsh penalty and should be used sparingly," *Wegener*, 527 F.3d at 692 (citation and quotation marks omitted), it is within the Court's discretion to decide whether a party's

untimely disclosure is harmless with respect to an opposing party's ability to adequately prepare for trial. Here, the Court finds that the late disclosure of these photographs is not harmless, nor is the late disclosure justified by Oak Creek in any way. The photographs will therefore be deemed inadmissible at trial. *See id.* (citing *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) ("failure to disclose in a timely manner is equivalent to failure to disclose")).

### C. Evidence of Repairs Made to One Mobile Home on January 22, 2020

Defendants contend that Oak Creek made repairs to one of its mobile homes on January 22, 2020, and then disclosed evidence confirming those repairs on February 20, 2020. Defendants maintain that this evidence should be deemed inadmissible at trial because Oak Creek violated the terms of the parties' Protective Order (Doc. 26), which requires Oak Creek to give notice to all Defendants before conducting any repairs, "unless such repairs are necessary to prevent immediate physical risk of harm to tenants or immediate damages to Oak Creek's property if it is not repaired." *Id.* at p. 2. The Protective Order also clearly states the parties' agreement "that nothing in this Order prevents the number or scope of future inspections or repairs of the subject mobile homes . . . ." *Id.*

Oak Creek explains in its written response that it repaired a hole in the floor of one of its mobile homes on January 22. *See* Doc. 243-1, pp. 72–76. It argues that the repair was necessary to make immediately and without advance notice to the Defendants. Oak Creek's attorney emailed Defendants' attorneys on February 20, the day that the photographs were produced, and explained that no advance notice was given "due to the

6

fact the damage presented an immediate risk of harm to tenants if not immediately repaired." (Doc. 250-3).

Based on the facts set forth in the briefing, the Court cannot find that Oak Creek clearly violated the Protective Order. Oak Creek represents that the damage to the floor in a single mobile-home unit was a trip hazard requiring immediate repair, and Defendants simply disagree with that assessment. Regardless, even if Oak Creek's actions did violate the terms of the Protective Order, Defendants' suggested remedy (or sanction) of excluding the repair evidence from trial is not justified by the circumstances. Defendants make no attempt to explain in the Motion how they will be prejudiced if the Court were to allow the evidence to be presented at trial—presumably along with Oak Creek's other evidence of past repairs. Instead of making a specific argument about these photographs, Defendants broadly claim that "*any* evidence produced after the discovery deadline should be excluded." (Doc. 244, p. 4) (emphasis added). This is not the correct legal standard.

The Court finds that Oak Creek has sufficiently demonstrated that the late production of this repair evidence is "substantially justified or is harmless" under Rule 37(c)(1). In addition, the Court notes that the parties did not contemplate the imposition of any particular sanction for violating the Protective Order when they agreed to it, and they appear to have understood and acknowledged in the Protective Order that periodic repairs to the mobile home units may be necessary prior to the date of trial. For all of these reasons, the Court declines to exclude the repair evidence from January 22, 2020.

## D. Exclusion of Jeffery Rothbart's Expert Testimony

Whether to exclude expert testimony from trial is a decision committed to a district court's discretion, subject to the Federal Rules of Evidence, including Rule 702. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (8th Cir. 2014). Rule 702 states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The Eighth Circuit has "boiled down" these requirements into a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Johnson*, 754 F.3d at 561 (quoting *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008)).

It follows that the proponent of expert testimony bears the burden of showing by a preponderance of the evidence that the above requirements are satisfied; however, "[c]ourts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757–58 (8th Cir. 2006). Nevertheless, the law is clear that "a court should not admit opinion evidence that 'is connected to existing data only by the *ipse dixit* of the expert.'" *Id.* at 758 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Here, Defendants have challenged the admissibility of the expert opinions stated in Mr. Rothbart's report. Oak Creek responds that Mr. Rothbart's testimony will be "helpful

8

to the jury when considering Oak Creek's claims for damages . . . ." (Doc. 250, p. 2). For the reasons set forth below, the Court disagrees with Oak Creek and will exclude Mr. Rothbart's testimony.

Turning to the substance of Mr. Rothbart's expert report, which is found at Doc. 88-3, there are three opinions offered. First, Mr. Rothbart claims that the current fair market value of the Oak Creek mobile home park is zero dollars. He concludes this without providing any reliable facts or data in support. He simply states that since "the repairs to date have been unsuccessful and [45% of] the homes continue to possess a material defect, the Homes have de facto been destroyed and they have no or very little value to a future purchaser." (Doc. 88-3, p. 5). He then surmises—without evidence—that "[w]hen residential rental units possess material defects . . . it is unlikely that they will be able to produce the same year over year revenue growth as a unit which does not have material defects would produce." *Id.* He also observes—again, without evidence—that "the income producing potential of the 28 damaged Homes will only decrease without replacement, as repair has proven to be impractical or impossible." *Id.*

In a previous Order on summary judgment, the Court considered Mr. Rothbart's report and determined that his opinion on the valuation of the Oak Creek's real property was unreliable:

> [W]hen Plaintiff's expert, Jeffery Rothbart, estimates that Oak Creek's 'property' was worth about $3,650,000.00 before the weatherization program, he is not opining about *property* appraisals. Instead, he has estimated the value of the *business* by applying a 7% capitalization rate to Oak Creek's average net operating income of $255,331.00. (Docs. 88-3, p. 12; 88-1, p. 4). In this same vein, when Mr. Rothbart offers the *ipse dixit* opinion that Oak Creek's 'property' is not presently worth anything, he means that Oak Creek's mobile-home-rental *business* has been devalued to zero dollars. (Doc. 88-3, pp. 5–6).

9

(Doc. 171, pp. 15–16).[2]  Accordingly, the Court concludes that Mr. Rothbart's ultimate opinion as to the "zero-dollar" value of the mobile home park is unreliable, and, thus, irrelevant.  Though his qualifications as a real estate expert and tax lawyer appear sound, this particular opinion is classic *ipse dixit* and is excluded under Rule 702.

Mr. Rothbart's second opinion in his report is that Oak Creek's mobile homes should be considered improvements to real property.  The Court already made this finding as a matter of law in its Order on summary judgment.  *See* Doc. 171, pp. 17–19.  Moreover, in that same Order, the Court pointed out that Mr. Rothbart had incorrectly conflated "an injury to . . . improvements with a damages remedy for permanent and irreparable physical injury to the land"—despite the fact that Oak Creek's land had suffered no physical injury whatsoever.  *Id.* at p. 16.  Arkansas law makes clear that "[i]mprovements to real property—analogous to the mobile homes here—are never valued in relation to the underlying realty when they suffer injury." *Id.* at p. 17.  Therefore, to the extent Mr. Rothbart seeks to testify that mobile homes are improvements to real property, that legal conclusion is not in dispute.  To the extent he seeks to testify about how the value of Oak Creek's real property compares to the value of its mobile homes, such testimony will not assist the jury's understanding of any ultimate issue of fact—and at worst could confuse the jury by suggesting an incorrect method of calculating damages.  The second opinion is excluded under Rule 702.

Mr. Rothbart's third and final opinion is that Oak Creek's real property would otherwise be valued at $3,929,000 had it not been for the damage Defendants caused to

---

[2] In light of the Court's earlier criticism of Mr. Rothbart's methodology, it is a bit of a surprise that Oak Creek devoted only a scant page of briefing to responding to Defendants' *Daubert* challenge.  *See* Doc. 250, p. 2.

10

the mobile home units. As previously stated, the value of the real property is not at issue in this case, and Mr. Rothbart's real property valuation is neither reliable nor trustworthy in an evidentiary sense. His third opinion, like the other two, will be excluded from trial under Rule 702.

### E.  Exclusion of David G. Shreve's Testimony Regarding Possible Future Damage

Defendants' final argument in their Motion in Limine concerns the testimony of Oak Creek's second expert, David G. Shreve. Mr. Shreve, a licensed professional engineer, testified in his deposition that the thirty-four mobile home units that have not yet manifested any signs of damage may still be damaged in some way. Oak Creek has responded to Defendants' attack with a single, cursory paragraph that references Mr. Shreve's professional qualifications and labels Defendants' criticism as "unfounded." (Doc. 250, p. 3).

The opinion in question appears in two places in the record. Its first appearance is in the last full paragraph of Mr. Shreve's expert report (just before the "Disclaimer" paragraph concerning the accuracy of his numerical calculations). He states:

> To date, structural damage to the flooring has manifested in 28 of the 62 homes involved in the AEP-SWEPCO HPwES Program at Oak Creek. *It is possible that the damage goes beyond that which has manifested.* Destructive testing would be required to determine the extent of damage.

(Doc. 250-2, p. 14) (emphasis added). The second place where this opinion appears is in Mr. Shreve's deposition. He testified that because Defendants performed the same improvements on all the mobile homes, it is reasonable to assume that all the homes will suffer the same damage to their flooring—eventually. *See* Doc. 250-1, p. 3. When opposing counsel pressed Mr. Shreve on this opinion, he conceded that a number of

"variables" could account for the fact that fewer than half the units had actually experienced flooring damage in the several years since the weatherization work was completed. *Id.* at p. 4. Some of those variables were "how well that belly space [under the mobile home] [was] sealed," whether a tenant was "not running the air conditioning," or whether the tenant was "running [the air conditioning] [at] a little less capacity." *Id.*

In considering the admissibility of Mr. Shreve's "possible" future damage opinion, the Court must evaluate whether it is the product of reliable principles and methods. Mr. Shreve states in his expert report that he visited four mobile homes "where the flooring failures had manifested." (Doc. 250-2, p. 5). He then uses scientific methods to explain why he believes the weatherization work performed by Defendants caused these flooring failures. In sum, he concludes:

> Air conditioning duct leaks were repaired without properly insulating the duct in the underbelly and repairing the belly board. This resulted in condensation forming on the ductwork and at the underside of the flooring. Moisture migration into the flooring structure caused the wood to swell, warp and buckle.

*Id.* at p. 6.

Since his opinion as to why the floors were damaged in certain mobile homes is scientifically supported, the question for the Court is whether those same scientific methods and principles support his opinion that the undamaged mobile homes may harbor some as-yet unmanifested, potential damage. This is a close call, but the Court finds that this opinion is also the product of Mr. Shreve's scientific and technical knowledge and should not be excluded. When making the reliability inquiry, the court should focus on "principles and methodology, not on the conclusions that they generate." *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012). Further, the Court believes that

Defendants' attack on this particular opinion goes more to its credibility and not its admissibility, "and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Loudermill v. Dow Chem. Co.,* 863 F.2d 566, 570 (8th Cir. 1988). Accordingly, the Court will not preemptively exclude this testimony from trial.

## II. MOTION TO REOPEN DISCOVERY (Doc. 248)

For the reasons stated in Section I.A., *supra*, this Motion will be granted and discovery reopened for a period of thirty days from today's date *only* for the purpose of permitting the disclosure of Exhibit A to the Motion (Doc. 248-1) and allowing Defendants to conduct discovery related to this evidence. The Court does not contemplate the extension of any other deadline in the case, including the trial date.

## III. CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that Defendants' Motion in Limine (Doc. 243) is **GRANTED IN PART AND DENIED IN PART**, and Plaintiff's Motion to Reopen Discovery (Doc. 248) is **GRANTED** for a period of thirty days from the date of this Order and only for the limited purpose described in this Order.

**IT IS SO ORDERED** on this 28th day of August 2020.

                                                                                                   _____
                                                                                                       TIMOTHY L. BROOKS
                                                                        UNITED STATES DISTRICT JUDGE